UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
RUDY J. MARINACCI,

                Plaintiff,

     -against-

UNITED STATES POSTAL SERVICE, PATRICK
DONAHOE, AND MEGAN BRENNAN,

                Defendants.
---------------------------------------------------------------------x

**MEMORANDUM OF
DECISION AND ORDER**

15-CV-01118 (LDH) (ST)

LaSHANN DeARCY HALL, United States District Judge:

      Pro se Plaintiff Rudy Marinacci brings the instant action under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"), alleging that Defendants United States Postal Service ("USPS"), Patrick Donahoe, and Megan Brennan (collectively, "Defendants") discriminated against him on the basis of age, gender, religion, race, color, and national origin. Plaintiff also brings claims of hostile work environment and retaliation. Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## UNDISPUTED FACTS[1]

      Plaintiff is a 59-year-old male born in 1957 who identifies as white, Caucasian, Catholic, and American. (Defs.' 56.1 Statement ¶ 1, ECF No. 34-3.) During the time period relevant to the instant action, Plaintiff was an employee of USPS. (*Id.* ¶ 2.) In 2011, Plaintiff served as

---

[1] The Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York require parties moving for summary judgment to submit a statement of allegedly undisputed material facts. *See* Local Rule 56.1(a). Where, as here, a non-movant fails to controvert a fact set forth in a movant's Rule 56.1 statement, that fact will be deemed admitted. *See* Local Rule 56.1(c); *see also Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). This Court has nevertheless searched the record before it to determine whether the facts presented support granting summary judgment. *Giannullo*, 322 F.3d at 140 (facts in unopposed 56.1 statements must be independently reviewed and disregarded if not supported by the record because "the local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law") (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001)).

1

manager of customer services at the Middle Village USPS station, with a pay grade level designation of EAS-20. (*Id.*) Prior to the events giving rise to this action, Plaintiff had filed two formal Equal Employment Opportunity ("EEO") complaints with the USPS Equal Employment Opportunity Office dated August 10, 2009, and February 18, 2011. (*Id.* ¶ 70.)

### I. Plaintiff's Temporary Detail at the Forest Hills Station

On May 20, 2011, USPS assigned Plaintiff to a temporary detail as manager of customer services at the Forest Hills USPS station. (*Id.* ¶ 5.) The temporary detail was effected through a PS Form 1723 signed by Plaintiff's supervisor Paul Stremel on May 20, 2011. (*Id.*) Under the form's terms, Plaintiff was to serve on the temporary detail from May 21, 2011, until November 15, 2011, with a pay grade level designated EAS-22. (*Id.*) On May 20, 2011, Stremel also completed and executed an affidavit in connection with Plaintiff's February 18, 2011 EEO complaint. (*Id.* ¶¶ 6, 73-75.) Stremel is a white, Caucasian, Catholic, American male born in 1975. (*Id.* ¶ 44.)

From June 1, 2011, until June 22, 2011, as the acting manager of customer services at the Forest Hills station, Plaintiff participated in staff telephonic conferences with other USPS employees. (*Id.* ¶ 7.) These conferences were referred to as "drill down" conferences, and their purpose was to discuss the station's performance, expectations, and action plans. (*Id.*) One of the USPS employees involved in the drill down conferences was Postmaster Edward Roggenkamp, who is a white, Caucasian, Catholic, American male born in 1955. (*Id.* ¶¶ 7, 46.) During the drill down conferences, Roggenkamp and the area manager would ask Plaintiff to account for the employees that Plaintiff supervised. (*Id.* ¶ 8.) They would also ask Plaintiff about the performance of the Forest Hills station. (*Id.* ¶ 9.) Among other things, Plaintiff would report on steps he took to correct any deficiencies at the station, as well as carrier and clerical

2

operations.  (*Id.* ¶ 10.)  During the drill down conferences, no one mentioned or referred to Plaintiff's race, color, age, gender, religion, or national origin.  (*Id.* ¶ 11.)

On June 15, 2011, Plaintiff attended a "Function 4 staff meeting" with Postmaster Roggenkamp and other managers of customer services to review clerical staffing profiles for USPS operations.  (*Id.* ¶ 12.)  Several days before the Function 4 staff meeting, Plaintiff asked Stremel to excuse him from the meeting because Plaintiff would not have certain necessary data prepared in time.  (*Id.* ¶ 13.)  Stremel declined to excuse Plaintiff from the meeting because Roggenkamp, not Stremel, had scheduled it.  (*Id.* ¶ 14.)  Plaintiff subsequently provided Roggenkamp with handwritten work product in response to Roggenkamp's request for data.  (*Id.* ¶ 15.)  At his deposition, Plaintiff testified that he believed that Roggenkamp told Jennifer Leung, another manager of customer services, that Plaintiff's work product was "crap."  (*Id.* ¶ 16.)  Plaintiff further testified that he did not believe that Roggenkamp made any reference to Plaintiff's race, color, age, gender, religion, or national origin in connection with this criticism. (*Id.* ¶ 17.)

Plaintiff subsequently met with Stremel and Roggenkamp on July 8, 2011, at which time Roggenkamp expressed a number of concerns regarding Plaintiff's performance during his temporary detail at the Forest Hills station.  (*Id.* ¶ 19.)  Roggenkamp noted that Plaintiff had permitted a lower-level employee to stand in for Plaintiff as a representative of USPS management at a meeting with the National Association of Letter Carriers.  (*Id.* ¶ 20.)  In addition, Roggenkamp noted that Plaintiff did not thoroughly investigate an allegation of assault by another USPS employee.  (*Id.* ¶ 21.)  Further, Roggenkamp stated that he was concerned about Plaintiff's representation that he would personally conduct surveillance of a USPS employee who was on extended sick leave but was alleged to be working a second job.  (*Id.* ¶

22.) Roggenkamp also noted that Plaintiff had failed to follow a Local Memorandum of Understanding for posting holiday schedules, which could have resulted in monetary losses. (*Id.* ¶ 23.) Roggenkamp also noted his concern that letter carriers at the Forest Hills station had made complaints of a hostile work environment caused by management, which included Plaintiff. (*Id.* ¶ 24.) Union representatives for those letter carriers had informed Roggenkamp that there was a risk for workplace violence at the Forest Hills station. (*Id.* ¶ 25.) Based on these various concerns, on July 8, 2011, Plaintiff was returned to his regular assignment at the Middle Village station with his previous pay grade level of EAS-20 four months earlier than scheduled. (*Id.* ¶ 26.)

## II. Plaintiff's Denial of a Promotion to the Fresh Meadows Station

USPS has specific policies that govern how applicants are selected for particular jobs. USPS grants positions through competitive and non-competitive processes. (Singh Decl. Ex. T, at 4-5, ECF No. 36-1.) Pursuant to USPS policy, competitive procedures are not required when an employee voluntarily accepts a position at a lower level pursuant to the noncompetitive process. (*Id.* at 4.) USPS policy also states that a noncompetitive applicant may be selected at any point before or during the competitive process. (*Id.* at 5.) When a position is not filled through noncompetitive procedures, then it is filled competitively. (*Id.*)

On June 19, 2011, Plaintiff applied through a competitive procedure to be the Manager of Customer Services at the Fresh Meadows USPS station, at a pay grade level of EAS-21. (Defs.' 56.1 Statement ¶ 18.) USPS ultimately gave the position to Robert Botman on a noncompetitive basis. (*Id.* ¶¶ 27-28.) At the time, Botman was serving as Manager of Customer Services at the Corona/Elmhurst station. (*Id.* ¶ 27.) The Fresh Meadows position was a downgrade for Botman, who had previously received a pay grade level of EAS-22 at Corona/Elmhurst. (*See id.*)

4

### III. USPS Investigates Complaints at the Forest Hills Station

On August 3, 2011, at Roggenkamp's request and in response to employee complaints of a hostile work environment, Mary McGovern and Jose Diaz conducted interviews of the Forest Hills station's employees. (*Id.* ¶ 30.) McGovern and Diaz asked the employees if they were experiencing issues of any kind with their management. (*Id.* ¶ 31.) When these interviews concluded, USPS did not take any employment action against Plaintiff. (*Id.* ¶ 32.)[2]

### IV. Plaintiff Requests a Temporary Modification in his Schedule

In August 2011, Plaintiff requested a modification of his schedule so that he could arrive at work and leave work earlier than scheduled from August 8, 2011, until August 12, 2011. (*Id.* ¶ 33.) Stremel denied the request and informed Plaintiff that he needed certain non-exempt salaried employees like Plaintiff to be present during the later hours of the day. (*Id.* ¶ 34; Singh Decl. Ex. U., at 93:25-94:4, ECF No. 36-1.)

### V. USPS Denies Plaintiff's Request to have Rudy Perez Assigned Acting Supervisor

At some point in the summer of 2011, Plaintiff returned to his letter carrier assignment from an acting supervisor detail. (Defs.' 56.1 Statement ¶ 37.) Plaintiff requested that Stremel assign Rudy Perez to be the new acting supervisor. (*Id*. ¶ 40.) Instead, Stremel offered the position to Anna Palanska, Plaintiff's second choice candidate. (*Id*. ¶ 41.)

### VI. Procedural History

On August 10, 2011, Plaintiff initiated contact with an EEO counselor. (*Id.* ¶ 59.) In his pre-complaint, Plaintiff alleged that he had been discriminated against on the basis of his race, color, religion, national origin, and age, and that he had been retaliated against based on his prior

---

[2] Plaintiff states—without support from the record—that these interviews were "clearly disputed acts of harassment conducted to undermine the authority of the Plaintiff," but does not dispute that no adverse employment action was taken against him. (Pl.'s 56.1 Statement 5-6, ECF No. 32.)

5

EEO activity. (*Id.* ¶ 60.) Subsequently, Plaintiff filed a formal EEO administrative complaint on November 23, 2011. (*Id.* ¶ 61.) On November 28, 2011, Plaintiff contacted the EEO, alleging that Stremel had further discriminated and retaliated against him by failing to reassign a particular acting supervisor to work at Plaintiff's station. (*Id*. ¶ 62.)

Plaintiff's administrative complaint was accepted for investigation on December 19, 2011. (*Id.* ¶ 63.) The specific issues to be investigated were discriminatory harassment based on Plaintiff's race, color, religion, national origin, age, and retaliation. (*Id*.) In his EEO complaint, Plaintiff complains that: (1) he was humiliated during a meeting on June 15, 2011, and at drill down conferences between June 1, 2011, and June 22, 2011; (2) he was removed from the detail at the Forest Hills station; (3) USPS did not promote Plaintiff to the position of manager of customer services at the Fresh Meadows station; (4) USPS conducted a "witch hunt" concerning Plaintiff at the Forest Hills station on August 3, 2011; (5) Plaintiff was not permitted to work an earlier schedule between August 8, 2011, and August 12, 2011, so that he would also be able to work at another job; and (6) Perez was not reassigned to Plaintiff's station as an acting supervisor. (*Id.* ¶¶ 64-69.) Plaintiff filed the instant complaint on March 4, 2015. (Compl., ECF No. 1.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). A genuine dispute of material fact exists when the evidence as to a fact that might affect the suit's outcome is such that a reasonable jury could find in favor of the non-movant at trial. *Anderson*, 477 U.S. at 248. At summary judgment, the movant bears the initial burden of demonstrating the absence of a

genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Once the movant meets that burden, the non-movant may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *see also Anderson*, 477 U.S. at 248; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to view all such facts in the light most favorable to the non-movant, drawing all reasonable inferences in his favor. *Anderson*, 477 U.S. at 255. Still, to survive summary judgment, a non-movant, even one whose pro se status mandates a liberal reading of his or her papers, must present concrete evidence and may not rely on mere conclusory or speculative claims or denials. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980) ("The litigant opposing summary judgment, therefore, 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial."); *Tillman v. Luray's Travel*, 137 F. Supp. 3d 315, 325 (E.D.N.Y. 2015) ("Nevertheless, pro se litigants must still be held to the normal standard for summary judgment, and 'bald assertions, unsupported by evidence,' will not satisfy the summary judgment standard.").

## DISCUSSION

### I. Plaintiff's Unexhausted Claims

Title VII and the ADEA both require an aggrieved party to exhaust his administrative remedies before filing suit in federal court. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015) (discussing Title VII exhaustion standard); *Sweeney v. U.S. Postal Service*, No. 08-cv-4417, 2013 WL 5744490, at *6 (E.D.N.Y. Oct. 23, 2013) (explaining exhaustion requirement under the ADEA). The purpose of the exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action.

7

*Fowlkes*, 790 F.3d at 384 (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998)). The administrative exhaustion requirement applies to pro se and counseled plaintiffs alike. *Id.* (citing *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 599-600 (2d Cir. 1999) (per curiam)).

Although exhaustion is ordinarily an essential element of Title VII and ADEA claims, claims that were not asserted before the EEOC or other administrative agency may be pursued in a subsequent federal court action if they are "reasonably related" to those filed with the agency. *See Sweeney*, 2013 WL 5744490, at *8 (ADEA); *Ige v. Command Sec. Corp.*, No. 99-cv-6916, 2002 WL 720944, at *5 (E.D.N.Y. Mar. 12, 2002) (Title VII). The Second Circuit has recognized three sets of circumstances under which claims not alleged in an administrative charge are "reasonably related" to the allegations in the charge such that it would be unfair to plaintiffs to bar such claims in a civil action. *Ige*, 2002 WL 720944, at *5 (citing *Butts v. City of N.Y., Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402 (2d Cir. 1993)). *First*, a claim is reasonably related where the complained-of conduct would fall within the scope of the agency's investigation that could reasonably be expected to grow out of the charge of discrimination. *Sweeney*, 2013 WL 5744490, at *8 (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 83 (2d Cir. 2001)). More simply put, the agency "likely would have investigated the conduct complained of anyway." *Id.* at *8 (quoting *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006)). *Second*, a claim is also reasonably related if it alleges retaliation against the employee for filing a charge. *Ige*, 2002 WL 720944, at *5 (citing *Butts*, 990 F.2d at 1402). *Third*, a claim is

reasonably related if it alleges further incidents of discrimination carried out in precisely the same manner alleged in the charge. *Id.* (citing *Butts*, 990 F.2d at 1402).

Here, Defendants argue that a number of Plaintiff's claims must be dismissed because Plaintiff either failed to timely present them to the EEO or did not present them at all. (Defs.' Mem. Supp. 5-6, ECF No. 34-2.) Specifically, Defendants argue that Plaintiff's claims premised on feeling humiliated during staff meetings in June 2011 are untimely because Plaintiff did not initiate contact with an EEO counselor regarding such claims within the 45-day time limit to do so. (*Id.* at 5.)[3] Defendants also contend that Plaintiff never raised discrimination on the basis of gender or Defendants' alleged failure to respond to a discovery request in an unrelated state civil lawsuit before the EEO. (*Id.* at 5-6.) As to Plaintiff's gender discrimination claims, Defendants are correct that Plaintiff never alleged discrimination on the basis of gender in his EEO filings (*see* Singh Decl. Ex. X, ECF No. 36-1), nor is it related to any other claim raised. Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's gender discrimination claims for failure to exhaust his administrative remedies. *See Chan v. Donahoe*, 63 F. Supp. 3d 271, 298 (E.D.N.Y. 2014) (dismissing national origin discrimination claim where administrative complaint only alleged discrimination based on race and age).

In addition, in his opposition 56.1 Statement, Plaintiff alleges for the first time that Defendants subjected him to a seven-day suspension and breached an EEO mediation settlement agreement. (Pl.'s 56.1 Statement 6-8, ECF No. 31.) Plaintiff did not raise these claims in the instant complaint, nor did he raise them in his EEO materials. (*See* Compl.; Singh Decl. Ex. AA, ECF No. 36-1.) Indeed, as Defendants clarify on reply, both of these incidents relate to other, more recent EEO complaints that do not form the basis of the complaint before this Court.

---

[3] The Court finds that it is unnecessary to address whether equitable tolling applies in this instance because, as discussed *infra*, this claim fails on the merits.

(Defs.' Reply Supp. 3-4, ECF No. 35.) The Court therefore will not consider these purported incidents in analyzing Plaintiff's claims.

## II. Discrimination Under Title VII and the ADEA

### A. Burden-Shifting Analysis

Claims under Title VII are governed by the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). At the first step of this analysis, a plaintiff bears the burden of establishing a prima facie case of employment discrimination by showing that: (1) he belongs to a protected class; (2) he was qualified for the position he held; and (3) he suffered an adverse employment action that (4) occurred under circumstances giving rise to an inference of discrimination. *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009). If the plaintiff makes out a prima facie case, the burden of production shifts to the defendant, who must proffer a legitimate, nondiscriminatory reason for the challenged employment action. *Id.* at 498-99. If the defendant articulates such a reason, the presumption of discrimination falls away, and the plaintiff must prove that the reason offered by the defendant was pretextual. *Id.* at 499. In other words, to survive summary judgment, a Title VII plaintiff must offer evidence from which a reasonable jury could conclude that an adverse action taken by the defendant was motivated by discrimination. *Dall v. St. Catherine of Siena Med. Ctr.*, 966 F. Supp. 2d 167, 187 (E.D.N.Y. 2013) (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013)). The legal analysis for discrimination claims under the ADEA is substantially the same, except that a plaintiff bringing a discrimination claim pursuant to the ADEA must prove that age was the "but-for" cause of the challenged adverse employment action and not just a contributing or motivating factor. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (citing *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 180 (2009)).

B. <u>Denial of Promotion and Early Termination of Temporary Detail</u>

Plaintiff claims that Defendants discriminated against him when he applied for but was denied the position of manager of customer services at the Fresh Meadows station and when his temporary detail at the Forest Hills station was terminated earlier than scheduled. (*See* Compl. 5; Pl.'s 56.1 Statement 2.) Defendants argue that Plaintiff has not adduced facts that raise an inference of discrimination sufficient to survive dismissal of these claims. (Def.'s Mem. Supp. 10-14.) The Court agrees.

1. Denial of Promotion

Here, with respect to Plaintiff's claim that he was wrongfully denied the position of manager of customer services at the Fresh Meadows station, Plaintiff offers no direct evidence of discrimination. Plaintiff fails, for example, to demonstrate that Defendants made any inflammatory or discriminatory comments regarding Plaintiff's membership in any protected class in denying him the promotion. *Cf. Delia v. Donahoe*, 862 F. Supp. 2d 196, 219-20 (E.D.N.Y. 2012) (granting defendant's motion for summary judgment on discrimination claim where Plaintiff "ha[d] not pointed to any direct evidence of discrimination, such as disparaging comments"). Instead, Plaintiff seemingly premises his claims on indirect evidence of disparate treatment. Plaintiff particularly relies on the charge that Botman, the individual who ultimately received the promotion, was Jewish. (Pl.'s 56.1 Statement 4.) However, when relying on evidence of disparate treatment to raise an inference of discrimination, a plaintiff must show that he was similarly situated "in all material respects" to the individuals with whom he seeks to compare himself. *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).

A plaintiff and his comparators are not similarly situated where, for example, they differ in experience, tenure, or other factors that typically affect an employee's pay rate. *See Simpson v. Metro-North Commuter R.R.*, No. 04-cv-2565, 2006 WL 2056366, at *7 (S.D.N.Y. July 20, 2006) ("[T]o be 'similarly situated,' employees must be substantially similar as to specific work duties, education, seniority, and performance history, all of which affect an employee's rate of pay.") (citing *DeJesus v. Starr Technical Risks Agency, Inc.*, No. 03-cv-1298, 2004 WL 2181403, at *9 (S.D.N.Y. Sept. 27, 2004)). Fatal to Plaintiff's claim, Botman had previously worked at a different station than Plaintiff and at a higher pay grade. (*See* Defs.' 56.1 Statement ¶ 27.) As such, Plaintiff's purported comparator was not similarly situated to him. Accordingly, Defendants' choice to hire Botman rather than Plaintiff for the position at the Fresh Meadows station cannot support an inference of discrimination. *See Leacock v. Nassau Health Care Corp.*, No. 08-cv-2401, 2013 WL 4899723, at *7 (E.D.N.Y. Sept. 11, 2013) (finding that plaintiff did not raise genuine issue of fact as to disparate treatment where comparator held a different position than plaintiff and had significantly more experience than plaintiff).

Moreover, even if Botman were a suitable comparator, Defendants have provided evidence—and Plaintiff does not dispute—that Botman received the position noncompetitively pursuant to USPS policy. (Defs.' 56.1 Statement ¶¶ 27-28.) The application of neutral company policies is "by definition" a legitimate, non-discriminatory reason for a particular action. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 51 (2003); *Sethi v. Narod*, 12 F. Supp. 3d 505, 547-548 (E.D.N.Y. 2014) (finding that allotting plaintiff paid vacation time in a manner consistent with a neutrally applied company policy was a legitimate, non-discriminatory reason for denying's plaintiff request for additional vacation days).

Plaintiff has offered no evidence to suggest that compliance with the policies at issue here was not neutral. Plaintiff simply offers unsupported allegations that the decision to award the position pursuant to USPS policy was retaliation for Plaintiff's prior EEO activity. (*See* Pl.'s 56.1 Statement 4-5.) Plaintiff has also failed to establish that adherence to the USPS policy was a mere pretext for discrimination. Thus, these claims also fail at the third stage of the *McDonnell* framework. *See Raytheon*, 540 U.S. at 51-52 (finding that plaintiff could not survive summary judgment absent evidence that company's policy against rehiring employees that had violated company rules was a pretext for discrimination). Defendants' motion for summary judgment as to this claim is granted.

2. Early Termination of Plaintiff's Temporary Detail

Plaintiff also contends that Defendants discriminated against him when Defendants terminated his temporary detail to the Forest Hills station before it was set to expire, resulting in a decrease in pay. (*See* Defs.' 56.1 Statement ¶¶ 3, 5, 26; Pl.'s 56.1 Statement 2.) It is true that a demotion evidenced by a decrease in wage or salary is an adverse employment action. *See Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (listing examples of adverse employment actions). Even if the Court construes the early termination of Plaintiff's temporary position as it would a demotion, however, there is no evidence that would raise an inference that the demotion was motivated by discrimination.

Defendants provide a legitimate, non-discriminatory reason for terminating Plaintiff's higher-level detail. Defendants argue that Plaintiff's temporary detail was terminated early because of "significant concerns" by management regarding Plaintiff's decisions, as well as complaints by other employees at the Forest Hills station. (Defs.' Mem. Supp. 21-22.) The record supports this argument. Stremel affirmed in an EEO affidavit that he and Roggenkamp

13

had decided to remove Plaintiff from his higher-level detail based upon several factors. (*See* Singh Decl. Ex. D, at 3, ECF No. 36-1.) For example, Plaintiff: (1) allowed a lower-level employee to represent management at certain meetings instead of doing so himself, which was Plaintiff's own responsibility; (2) failed to investigate an alleged assault of an employee by one of his subordinates; (3) informed Roggenkamp and Stremel that he was going to conduct surveillance of an employee who was out on extended sick leave; (4) did not follow accepted procedures for posting the USPS holiday schedule, which purportedly put the USPS in jeopardy for monetary losses; and (5) employees complained that Plaintiff and his coworker Zapata were fostering a hostile work environment and that the employees were afraid of possible violence in the workplace. (*See id.*) These considerations provide legitimate, non-discriminatory reasons for terminating Plaintiff's temporary detail, defeating an inference of discrimination. *See Beshty v. General Motors*, 144 F. App'x 196, 196 (2d Cir. 2005) (finding that plaintiff's confrontational management style and failure to mentor and lead the group he was hired to supervise provided legitimate, non-discriminatory rationale for his termination). This is especially true where, as here, Plaintiff has not provided any evidence demonstrating pretext. *See Joseph v. Owens & Minor Distrib., Inc.*, 5 F. Supp. 3d 295, 313-14 (E.D.N.Y. 2014) (concluding that plaintiff failed to establish prima facie case of discrimination where defendant articulated non-discriminatory reason for termination, including complaints from customers, but plaintiff did not provide evidence of pretext).

Furthermore, an inference against discrimination exists where the person who participated in the allegedly adverse decision is also a member of the same protected class as a plaintiff. *Chan*, 63 F. Supp. 3d at 294 (quoting *Drummond v. IPC Int'l, Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005)); *see Williams v. Brooklyn Union Gas Co.*, 819 F. Supp. 214, 225

(E.D.N.Y.1993) (dismissing age discrimination claims where the employees responsible for plaintiff's termination were older than plaintiff or approximately the same age). Plaintiff was removed from his temporary detail by Stremel and Roggenkamp. (*See* Singh Decl. Ex. D, at 00091.) Notably, Roggenkamp belongs to all of the same protected classes as Plaintiff: he is a white, Caucasian, Catholic, American male and is two years older than Plaintiff. (*See* Singh Decl. Ex. E, at 1, ECF No. 36-1.) Stremel belongs to all of the same protected classes as Plaintiff, except for his age: Stremel is a white, Caucasian, Catholic, American male who is now forty years old—and was therefore just outside of the protected age class at the time of the alleged discrimination against Plaintiff. (*See* Singh Decl. Ex. D, at 1.) As to the difference in age between Stremel and Plaintiff, there is no evidence that age was the "but-for" cause in Stremel's decision to terminate Plaintiff's temporary detail, as is required to establish a prima facie case under the ADEA. *See Gorzynski*, 596 F.3d at 106. Plaintiff has fallen far short of establishing that his temporary detail was terminated for discriminatory reasons. As such, the Court grants summary judgment in favor of Defendants as to this claim.

### C. Plaintiff's Other Discrimination Claims Do Not Involve Adverse Employment Actions

Plaintiff alleges that he was discriminated against when Defendants: (1) denied his request to temporarily work a modified schedule; (2) denied his request to have a particular acting supervisor assigned to his station; (3) humiliated him at weekly staff meetings; and (4) subjected him to a "witch hunt" after other employees complained that Plaintiff contributed to a hostile work environment at the Forest Hills station. (*See* Compl. 5.) Defendants correctly argue that none of these actions constitute adverse employment actions. "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir.

2015). Such a change "must be more disruptive than a mere inconvenience." *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)). None of the alleged acts against Plaintiff meet this standard. *See Antonmarchi v. Consol. Edison Co. of New York*, No. 03-cv-7735, 2008 WL 4444609, at *14 (S.D.N.Y. Sept. 29, 2008), *aff'd*, 514 F. App'x 33 (2d Cir. 2013) (denial of preferred schedule did not constitute adverse action under Title VII); *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (definition of adverse employment action is a change of terms and conditions of plaintiff's own employment); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 249 (1981) (an employer has discretion to choose among equally qualified candidates, provided the decision is not based on unlawful criteria); *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d Cir. 2011) ("[C]riticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action."); *Tepperwien*, 663 F.3d at 568-70 (distinguishing "materially adverse" actions from "trivial slights" and determining that an investigation regarding plaintiff that did not result in discipline was the latter).

### III.    Hostile Work Environment

To prevail on a hostile work environment claim, a plaintiff must show that severe "discriminatory intimidation, ridicule, and insult" permeated his workplace, altering the conditions of his employment and creating an abusive work environment. *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)). A plaintiff must generally identify more than episodic incidents and demonstrate that the complained-of conduct was pervasive, continuous, and concerted. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). Isolated incidents, unless very serious, do not meet the threshold

of severity or pervasiveness. *Id.* Complaints about ordinary managerial decisions will not satisfy this standard. *Crawford-Bey v. N.Y. & Presbyterian Hosp.*, No. 08-cv-5454, 2011 WL 4530193, at *8 (S.D.N.Y. Sept. 30, 2011). In addition, it is axiomatic that a plaintiff must demonstrate that the conduct occurred because of his membership in a protected class. *Alfano*, 294 F.3d at 374 (citing *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)) (finding of hostile work environment in gender discrimination context required demonstration that conduct occurred because of plaintiff's sex); *accord Vito v. Bausch & Lomb Inc.*, 403 F. App'x 593, 595 (2d Cir. 2010).

Plaintiff maintains that he was the victim of a "campaign of harassment" beginning on June 6, 2011. (Pl.'s 56.1 Statement 1.) Plaintiff testified that this "campaign" included "negative responses" and comments that his work was "crap." (*See* Singh Decl. Ex. U, at 49:10-17, 54:13-15.) This conduct does not rise to the level of discriminatory intimidation, ridicule, or insult actionable under hostile work environment claims. *See Crawford-Bey*, 2011 WL 4530193, at *8 (dismissing plaintiff's hostile work environment claim where she failed to show that any purportedly hostile remarks were intended to intimidate her and where she otherwise complained of conduct that amounted to "ordinary management decisions"). Further, there is simply no evidence that any of the conduct that Plaintiff argues gave rise to a hostile work environment was at all related to his membership in any protected class. Accordingly, the Court grants summary judgment as to Plaintiff's hostile work environment claim.

## IV.     Retaliation

Plaintiff claims that Defendants retaliated against him for his previous EEO-related activity by: (1) terminating his temporary detail in Forest Hills early; (2) denying him the promotion to the Fresh Meadows station, which Botman ultimately received; (3) conducting investigations into Plaintiff's character in Forest Hills; (4) denying Plaintiff a modified schedule

17

in August 2011; and (5) declining to give the position of acting supervisor to Plaintiff's first choice candidate. (*See* Pl.'s 56.1 Statement 1-2, 4-5.)

To establish a prima facie case of retaliation under Title VII, a plaintiff must show: (1) participation in a protected activity; (2) defendant's knowledge of the same activity; and (3) an adverse employment action (4) causally connected to the protected activity. *Weber v. City of N.Y.*, 973 F. Supp. 2d 227, 266 (E.D.N.Y. 2013) (citing *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (per curiam)). There can be no dispute that Plaintiff engaged in protected EEO activity and that Defendants were aware of such activity. However, the Court has already determined that the investigations, denied schedule modification, and failure to select Plaintiff's first choice candidate for the position of acting supervisor are not adverse employment actions as a matter of law. Hence, the only actions at issue are the denied promotion and the early termination of Plaintiff's temporary detail. The remaining question is whether those actions were causally linked to Plaintiff's protected activity.

A plaintiff may establish a causal connection between protected activity and an adverse employment action either through direct evidence of retaliatory animus or indirectly through circumstantial evidence. *Butler v. Potter*, No. 06-cv-3828, 2009 WL 804722, at *11 (E.D.N.Y. Mar. 26, 2009). The record is devoid of any direct evidence of retaliatory animus. For example, there is no evidence that Defendants threatened Plaintiff or made comments that would indicate that Defendants had any retaliatory motive. *Cf. Mandell v. County of Suffolk*, 316 F.3d 368, 383 (2d Cir. 2003) (direct evidence of retaliatory animus found where termination letter stated that plaintiff was being moved for having "branded the entire department as racists and anti-semites"); *Douglas v. Hip Centralized Laboratory Services, Inc.*, No. 03-cv-205, 2005 WL 1074959, at *3 (E.D.N.Y. Apr. 29, 2005) (collecting cases and finding no direct evidence of

18

retaliatory animus where plaintiff did not adduce evidence of retaliatory statements); *cf.*; *Risna v. American Broadcasting Companies, Inc.*, 219 F. Supp. 2d 568, 571, 573 (S.D.N.Y. 2002) (finding direct evidence of retaliatory animus where email stated that plaintiff was being removed from project because she had filed an EEOC charge against the company).

Where there is no direct evidence of retaliatory animus, proof of causation may be shown indirectly by demonstrating that the protected activity was followed closely by a retaliatory action. *Butler*, 2009 WL 804722, at *11 (citing *Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 217 (2d Cir. 2001)). The Second Circuit has not defined a "bright line" setting the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship. *Frazier v. City of N.Y. Dep't of Correction*, No. 14-cv-1224, 2016 WL 4444775, at *4 (E.D.N.Y. Aug. 23, 2016) (citing *Gorman-Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001)). However, district courts in this Circuit have "consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation." *Id.* (collecting cases); *see also Clark County School District v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing with approval cases dismissing retaliation claims where there was a three- to four-month gap between protected activity and adverse employment action); *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation.").

Here, Plaintiff filed two EEO complaints preceding this action on August 10, 2009, and February 18, 2011. (*See* Defs.' 56.1 Statement ¶¶ 71, 73.) Plaintiff's temporary detail was terminated on July 8, 2011, nearly five months after his last protected activity. (*See id.* ¶ 26.) Plaintiff was denied the promotion to the Fresh Meadows station on March 7, 2012, more than

19

one year after his last protected activity. (*See* Singh Decl. Ex. K, ECF No. 36-1.) The intervals between Plaintiff's EEO complaints and the adverse employment actions at issue are simply too attenuated to support an inference of causation. Because Plaintiff has failed to establish a causal connection between his EEO activity and the adverse employment actions, his retaliation claims are dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted in its entirety, and Plaintiff's claims are dismissed, with prejudice.

SO ORDERED:

 /s/ LDH
LaSHANN DeARCY HALL
United States District Judge

Dated: Brooklyn, New York
      March 31, 2017